The next case called is 121, Segment of Revenue, Agenda Number 13. Counsel, are you ready? And are you? Yes, Your Honor. You may proceed. May I please have the Court? Good morning, Your Honors. I am Illinois Assistant Attorney General Carl Elis, appearing on behalf of the Department of Revenue. Your Honors, Citibank cannot obtain a tax refund or tax credit for its bad debt expense incurred in running its credit card business under Section 6 of the Retailer's Occupation Tax Act, where it never incurred tax and never remitted tax to the Department. Assignments are not permitted where they conflict with law or violate the State's public policy. And I would contend that both limitations on assignments apply to this case. Section 6 provides plainly that the Department may make refunds to the person who made the alleged payment or, in the case of that person's death or disability, to his legal representative. Citibank falls within neither of these statutory categories. An Illinois law with regard to taxes is that in the absence of clear statutory authority to make a refund or allow a credit, then the Department may not provide a refund or a credit in the case in which a tax has been voluntarily paid. Now, the statutory language is not the only reason I think Citibank's arguments here are incorrect. In 1964, in a case called Snyderman, this Court held that the language of Section 6 was designed by the General Assembly to provide State's revenue and resources are not distributed by the Department to those who are not intended by the General Assembly to receive it. In the language of the Snyderman case, tax refunds are designed to be made by the Department only to the person, only to the entity to receive a credit. The only person entitled to receive a credit is the remitter of the tax. And again, in this case, Citibank did not remit tax to the Department, did not incur a retailer's tax. Now, this older tax law, sorry, assignment law has been changing over the years. In recent times, assignments are generally recognized. This tax law that I'm speaking about is an older law, and it's not unique to Illinois. My brief sets out more than a dozen cases which have been brought to other States around the country with essentially the same argument that Citibank made here, which is that they should stand in the shoes of the retailer that paid the tax because they're a credit card company, and for that reason they should be allowed a refund. And with only one exception, there's 10 or 12 cases in my brief. The other courts, other State courts have rejected this argument. The only exception is from a 1994 case out of Washington State, a case called Puget Sound. That case is very old now. No other court has adopted that reasoning, that an assignment should trump the general tax law. Wouldn't an assignment be proper under Section 16? No, Your Honor. And why not? Well, if we're talking about credit card debt, as we all know, Section 60, subpart B talks about when a credit card company, or I'm sorry, when a credit card debt can be taken by the retailer. And under that section, that has a post-date, January 1, 2006, and it has to relate to a certain kind of credit card debt, private label credit card debt, which is a type of debt where the card is only usable at one merger. That's an unusual type of card, but not that common. I haven't seen it in Macy's or some other department stores. Is it your position that Citibank has recourse against the retailers involved in this circumstance? If Citibank were to make an arrangement with the retailer, that would be fine. The retailer could make the application to the department. Provided the retailer meets the requirements of the statute. And the statute will not allow a retailer that's using a credit card as a third-party lender to meet the requirements of the statute. So now that we don't have a statute in Section 60 that tells us what has to happen for a retailer to get a refund in the credit card situation, then certainly we know that if the retailer can't meet the requirements in Section 60, then by assigning it to a third-party lender, the lender can't get it either because the whole point of Citibank's is they want to stand in the shoes of the retailer. Under Section 60, the new 60, the retailer has to meet certain requirements, and Citibank doesn't. The retailer wouldn't meet them, so Citibank couldn't do it. So these companies would be really without recourse? Yes, but that's not an unfair result. This is credit card debt, which is really different than retailer debt. Once debt is turned into credit card debt, it has opportunities for lenders to kick back profit, which is designed, the profit is all built into the idea that some borrowers default, and so the lenders collect interest on this money as any lender does. And this revolving interest expense that credit card companies charge consumers, the car fees, the late payment charges, the other types of income streams that credit card companies have, means that credit card companies are able to actually absorb this cost for some retail sales. Well, isn't that the same case with the retailer's own credit card? They charge interest. They charge late fees. Well, if the retailer is using his own credit card, I don't believe there's any examples now in modern times where a retailer issues a credit card. I'm sorry. Yeah, a retailer issues a credit card. That's unusual. Usually banks issue credit cards, and the retailers allow credit cards to be used in their store. But if, you know, you were dealing with, say, an old farm supply store, and maybe the 30s or the 40s, I can see this happening typically, someone comes in to buy equipment, and the person says, I know who you are, I'll extend you credit, you can buy this tractor, and then the person doesn't pay on the tractor. In that case, the department would say, fine, we have a retailer who backed the transaction financially, suffered a loss, and in that case, the department would have allowed a refund. But in this case, you have third parties coming in and saying, we're in the lending business, we're going to finance your transactions, and we think that's a very different situation when a credit card lender comes in to lend them than when the Illinois retailer essentially extends credit itself. But isn't that a windfall then for the Department of Revenue? I mean, you get to keep some money that you got that was collected for you. No, it's not a windfall. I would urge the Court to view Section 6 as a matter of statutory grace provided by the General Assembly to retailers, because the retailers act as the state's collection agency with regard to use tax and sales tax, retailers tax and use tax. I think this is a provision that the General Assembly offered to those merchants who serve the state and do this function for the state as a way of showing some sort of support of their business. And the General Assembly never intended for this to be used in a third-party commercial lending environment. Are you saying then that because the sale is complete at the time the sale is made, even if the merchandise isn't paid for, unless the legislature gave this avenue of getting a refund, there would be no refund, whether the merchandise was paid for or not? Yes, Your Honor, and that's an important part of the difference. That's my point, and that's where my opponents are going to fight. I think you need to understand that the retailers' occupation tax and the use tax act are taxes that are assessed on the gross sale price of the objects sold, without regard to whether any money eventually comes in payment or not. And the statutes are very clear about that. The tax is assessed on the purchase price, whether it's paid in cash or credit. So at the time of the sale, the only question is, is how much is the purchase price, and that's what's taxed. Later, under the Act and the Department's regulations, if there is a loss by the retailer, the General Assembly does allow the retailer to get a refund, consistent with the language of Section 6. Our argument is it would not allow other parties to get that same benefit. And that's not as I said. That's anchored in the language of Section 6. It's anchored in this Court's decision in Snyderman. It's consistent with the tax law from a survey of every state I was able to look at, except for the one exception of Washington State. This would really change the way the state's taxes are refunded, because credit card companies would then use all of their bad debt, and that's essentially what Citibank did. It just collected all of its bad debt from all of its credit cards and tendered that amount out to the Department and said, we know that 8 percent of this should have been 6.25 percent. They asked for 8. This is bad debt, and I want the state to refund this. Mr. Ellis, though, just because the Department never actually allowed the assignment of the right of refunds doesn't necessarily mean your conduct comports with the statute, does it? I'm sorry, Your Honor. I'm trying to understand. The Department never has allowed these kinds of refunds. That's correct. And that doesn't tell us, I suppose your question is, that doesn't mean that this can't be the first time. Right. This can't be the first time, though, because we know, if I were to have to present cases to you, I would say, look, in 1960, the Court looked at the language of Section 6 and considered it and decided that it was important that these credits and refunds be limited to the retailers who incurred it and paid the tax. Otherwise, as the Snyderman case says, there's the risk that third parties would come in and credit card refunds would be paid to parties who were not entitled to it, either because the General Assembly didn't intend it or because of the state. But Citibank did bear the burden of, I mean, the stipulated facts show that the Citibank bore the burden of the tax since it remitted the funds to the retailers who then paid the Department. I would ask, Your Honor, to carefully look at those stipulations. I read the stipulations to say the Department stipulates that Citibank bore the burden of the bad debt laws and not the burden of the tax. The general, the ALJ heard the case, actually came to the conclusion that Citibank had not borne the burden of the tax. Now, my argument would be the same whether Your Honors would conclude that Citibank bore the burden of the tax or didn't bore the burden of the tax. My argument is bearing the burden of the tax is not enough under what the General Assembly requires. I understand, Mr. Ellis, that your position is that the credit card company isn't subject to the refund. But back to the question of windfall, the retailer in the situation of an assignment isn't entitled at that point to the refund, right? That's correct. So back to the question of windfall, I mean, the Department then does not have to refund the tax. So they keep an amount that they couldn't have kept if it was brought by the retailer. But how is that not a windfall? It's not a windfall, Your Honor, because the tax is assessed by the gross purchase price, assessed by the fact that there's been a transfer of ownership of the goods. All of that happened. So the tax is owed and is properly collected by the Department. My argument is that because Section 6 has been interpreted as it has, as far back as I can tell, Section 6 is owed, we have allowed retailers to make the claim when they bear the burden. But that does not make an undoing of the windfall false statement. I'm suggesting that that's, in fact, the statutory phrase provided by the General Assembly. It actually represents a statement allowing the retailers to have that tax money, even though I can show you the section of the statute and say, look, this happened, this happened, this happened. The tax is due. It's properly paid. We can keep it, and that would be fair. But the General Assembly has said that retailers in certain circumstances should get a refund of this tax, and so the Department has allowed that. But Citibank is attempting to take that advantage dramatically, so that the State would owe millions of dollars every year on the debt expense. My suggestion is that the General Assembly has issued a targeted refund credit provision. And also, I'd like to talk briefly about the language of Section 6. Are you saying that Citibank can take it further than in the assignment setting, then? They're using the assignment to expand leverage. What is a small, targeted refund provision meant for our tax collectors, our retailers, and they're trying to collect that money, use that as a way out. Even under their argument here, it wouldn't go further than the assignment setting, right, the assignment from the retailer to the creditor. They have an assignment from their retailers. They have conceded to that or have stipulated to that fact. But they're taking what is a small refund provision designed for targeted retailers, and they're using it in a way that the General Assembly didn't intend. And I think Section 6d of the provision makes it very clear what the General Assembly intended, because only retailers who use the benefits of a private, get a refund on Section 6d. This is not private. That also doesn't meet the time frame of the new provision. So I'd also like to mention that Section 6 is not siloed with regard to assignments. Section 6 allows assignments in certain circumstances. It allows credit memoranda to be assigned. Credit memoranda are like judgments issued by the Department of Revenue saying, and you can collect that in the future by taking the option of a tax exit. In certain circumstances, that's problematic for retailers, because sometimes they don't have future tax debt, but they have a credit memoranda. And in that case, Section 6 allows an assignment of the credit memoranda, but only from one retailer to another retailer. So the General Assembly has in mind that these provisions in Section 6 are designed to help the retailers. And to the extent that a retailer can assign a credit memoranda under Section 6, it tells you that the General Assembly didn't intend for something less than a credit memoranda to be assigned, and that would be a credit claim like Citi's index here. So I think I've covered my points. If there are no further questions, I'll just be back in a couple of minutes. Thank you. Okay. Thank you. May it please the Court, Your Honors. Peter Larson, appearing on behalf of Epelease Citibank. And I'd also like to say good morning again, a little more loudly than the first time. And it really is an honor to be here today. The issue in this case is actually pretty straightforward and simple. It's a pure legal issue, which the Circuit Court and the First District Court of Appeals both ruled unanimously in favor of Citibank on. And that's where the retailer can assign its right to a tax refund. The Department, in its brief and argument, has lots of different arguments, and the argument is involved at every stage of the proceeding. I think trying to make it complicated has been briefed by the courts. And these alleged policy statements or issues or arguments are all flawed in one way or another, and I'll just kind of quickly go through and address those. But I'd like to get back real briefly to the Court of Appeals' analysis, which is about as concise and straightforward of a way as this case can be explained. And that is the Department and Citibank agree that there is a tax refund right that the legislature has granted to, at the minimum, to retailers. And that is when there's a bad debt on a sale or a tax was paid, there is some form of refund or credit that has been provided. The Department's own regulation says, in the case of a bad debt, that bad debt becomes a tax paid in error for purposes of Section 6, which is the operative statute. Therefore, the Court of Appeals correctly noted the only issue is, well, if the retailer has this right that's been clearly given by the legislature, can it be assigned? And, of course, what the Court of Appeals did is look to the Illinois law of assignment, which is very clear and unequivocal, which says that all statutory rights and clauses of action can be assigned. The only way that they cannot be assigned is if the legislature specifically and unambiguously says that it can't be assigned. In fact, if you go back to the Noodleman case, which this Court decided in 1940, the Department of Revenue in that case, on the assignability of tax refunds, made these exact same arguments. And the Court said, it doesn't matter if the statute says this is for retailers. As long as it says it doesn't prohibit assignment, then assignment is allowed, because that's the law of assignment. There's no exception for tax law. There's no exception for securities laws. There's no exception for any other type of law. There's only one very, very narrow exception, and that's really the only argument that the Department has in its briefs before this Court, which is the public policy exception. Kennedy, of course, dealt with the assignability of a credit memorandum as opposed to claims for refunds. And it seems that Section 6 retains that restriction. Doesn't that statutory restriction prohibit us from going further than Noodleman to apply assignments to claims for refunds? Well, actually, Noodleman didn't restrict assignments to a credit memorandum. The facts of Noodleman just happened to involve a credit memorandum. And Section 6 actually says in its title, credit memorandum or refund. And the statute says, if there's a tax paid in merit, the Department shall issue, hey, a credit memorandum or a refund. So the statute clearly says that you can have a credit memorandum or a refund right in the retail. And Noodleman couldn't possibly mean that, well, because the statute doesn't prohibit the assignment of a credit memorandum, that we're going to allow credit memorandum to be assigned. But somehow, any other type of tax benefit that's not a credit memorandum can't be assigned. That can't possibly be with the Supreme Court because it wouldn't make any sense. There's multiple kinds of tax benefits besides a credit memorandum and a refund. There's deductions, and there's other types of credits and incentives, all that are throughout taxable income tax and sales tax. And to me, it would be fairly inconceivable that the Supreme Court was going to carve out our rules and say, we're going to allow an assignment of a credit memorandum, but not anything else in taxes, even though the legislature never prohibited any assignments in taxes. And we're going to make that exception. That's the reason that statutory rights and positive action are freely assignable, is so that parties know that everything, every property right they have, every piece of property they own, they can sell it, unless the legislature says specifically that they can't. Kennedy. The language of Section 6 specifically says that a credit memorandum may be assigned. It doesn't talk about a claim for a refund, does it, as far as the issue of assignability? That's correct. And that's fine that it says that. In order to prevent an assignment of a refund, the statute has to say the refund is not assignable. And the Illinois statutes and statutes in many other states are literary examples of rights that are specifically made nonassignable. The reason for the credit memorandum assignment policy, this is not in the record, but the reason the Department has it is because to take a credit, a credit is a procedural mechanism where you take a deduction on your return against a tax that you currently owe. So some people who might have a tax benefit might not be able to realize a high amount because they don't have a high amount in the tax tax law, and so they knew that it would be common for retailers to transfer credit, and they wanted to make it actually an easy mechanism to use and actually have it pre-approved by the Department. But that doesn't in any way, the Department by saying, or even the legislature by saying a credit memorandum can be assigned doesn't mean that a refund cannot be assigned. The legislature has to specifically clearly state that, as was indicated by the reports. See, it says that this section of the statute deals where there has been some kind of finding that this refund or credit memorandum is appropriate, and that in this case, what was assigned was something many steps before that, a potential claim for a refund, much different from an actual determination of refund. Does that make sense? It makes sense that actually that's what I understand the Department to be arguing, and that it has some relevance. I don't know. Maybe my question is a little bit different. Why doesn't that make sense? If we're talking about one where there's been a determination there's going to be a refund, versus we'll enter into our agreement early on, and maybe you'll have a claim, maybe you won't. Are those different kinds of property rights? Well, there are all kinds of property rights, and they're all assignable. One property right may be, and this is what's at issue in this case, there's all kinds of facts that can develop that can give someone a right to a tax benefit, and at the time of the assignment, all of those rights may have come to pass and may have a voucher from the Department in hand, or you may not. And so it's analogous, it's always analogous to, like, a statutory right to refuse. If Citibank and the retailer work together to finance the sale of a TV set, and the customer never paid, and Citibank took an assignment of that debt and all related rights at the time of the sale, then Citibank needs to exercise the statutory rights to repossess that TV. Well, at the time the retailer made the assignment, the retailer didn't have the right to repossess that TV because the customer had no default. What Citibank is acquiring is all the rights that retailers have. Some of them are vested at this time and some are not, but they're still rights. They're value-added property rights. And so just like by statutory right to repossession, the right to the ability to sue the customer if the customer doesn't pay, those are all rights that aren't fully referred or vested at the time that the assignment occurred. But what happened here is you have a complete assignment on all rights that the retailer had regarding that sale and that tax, which is provided in the stipulation, and one of those rights is the right to claim a tax refund, of course, if that unmatured or unvested state doesn't invest. And if you flip it around and think about, well, I don't know, maybe the Newden case just meant you've got to have this memorandum and then that acts. Well, if you think about the implications of that, what that's saying is, okay,  I'm deciding I'm going to let them finance it, and if their account goes bad, the only way I can get a refund, I can collect and have something to sell, is if the department compels me to tell the retailer they've got to get a refund. So let's say that the retailer self-finances and doesn't assign the right, and the customer faults, and the retailer goes to the department and says, hey, I've got a credit credit, I've got a bad debt, and this regulation specifically says that. The department says, no, I don't think you qualify. Well, then what the retailer has is the right to sue the department because the department unjustified and denied the refund. I guess if I'm the retailer, I can't assign that. I can't sell that because the department didn't grace me with that. It doesn't make sense that we have to have the department bless the taxpayer in advance through a credit in order to have a right. Once the events occur under the statute, we have the right to, if the department doesn't like it, sue them and affect them. But it's a right that can be assigned to us. Roberts. Who actually transmits the sales tax to the department? Well, the retailer who is the one who actually provides the funds to the State, and then in this case, the City provides the same funds to the retailer, but the actual transmission, you know, point A to point B is from the retailer. If you're talking about the electronic submission of the funds through the ACA system, that would be the retailer that does the sales tax. Okay. And then City Bank, of course, stipulated that it would agree with the ones that provided the funds for the transaction. But, you know, getting back to the Court of Appeals decision, they specifically said, okay, the retailers have this right, just like some of your questions earlier. The department says and agrees, hey, if the retailer had not assigned its rights, they could claim this and we would have paid them. Now, if that's the case, then the whole case turns on whether that right is assignable. And as the Court bellows, all rights are assignable unless they're specifically prohibited. If the statute is clear, they're not expressly prohibited. Or unless there's some public policy against it, the public policy exception has got to be clear and unequivocal. And that's what the majority of the department's issue is. Therefore, I think the department has argued that by reason of the amendment of Section 6D, it's clearly a statement of the legislative intent not to extend the same right to refund that private label credit cards have, not to the general, like Citibank. How do you respond to that? Well, that wouldn't really fit into the public policy argument. That's more of did they expressly indicate their intent that a statutory right is not assignable? And there's nothing in 6D that talks about assignability. They didn't. They had the opportunity right then and there. And, of course, they've had the opportunity since 1940 to say something's not assignable and they never did. But even in 6D, when they stepped in to address a specific situation, they didn't say anything about assignability. Nor did they amend 6A. 6A is the provision we're under today. And they didn't touch it. They added 6D as a completely new section to address a very specific situation that provides a refund right where one didn't exist before. They're not limiting anything. They're actually adding a right that didn't exist. And they did it in 2016, or effectively in 2016. So to say that something the legislature did without any commentary or statements to assignability in 2016 somehow shines a light that the legislature intended when they adopted this law about 80 years ago, as it applies to this case, which is 2008 to 2009, seems to be a stretch that you could say that has a statement of the legislature's intention not to abolish it here. In Section 6D, of course, we're not talking about debt, but just as a practical matter, it provides that if accounts that are written off as bad debts and their claim is made, the refund is made, if there's later collections made on that, they have an obligation to pay off the tax. What happens with Citibank if that situation occurred? It's the same issue. Citibank would have to pay sales tax. Absolutely. And just like in the regulation of the bad debt division, there's other provisions that require Citibank and other finance companies to pay sales tax also. Like if they end up with a collection of property through repossession or other activity when they make sales, they're acting as a retailer. But if Citibank were to collect a bad debt refund and they were paid the refund, now, they're only allowed to do it until they file a federal tax return showing that the account and the alimony charged are for federal tax purposes. So it's unlikely after that point that they'll subsequently collect those debts. But if for some reason they do, then they would have to repay a sales tax or a retail tax collection tax refund that they received on that bad debt. That's clearly occurring without having to resort to citizenship. And so all that's really left are some kind of general public policy position. And the public policy law is extremely narrow. And to find a public policy exception has to have something that is extremely clear and unequivocal. And the only examples of Illinois case laws are things like a tort law or courts of personal injury type rights that are personal in nature. But not only is this public policy exception not applied for that reason, this is good news. The legislature already decided that these policies, the refund, tax payday, airfare, has been defined as bad debt. The legislature has even gone further and said, we're going to add a situation that doesn't currently qualify and provide room for additional grounds, all going to the same point. And so this is where the Department, I think, mixes up a couple of concepts. And I want to make sure the Court's clear on this. The Department says that if the retailer had not assigned these rights, the retailer would have been paid. But one of the reasons Citibank didn't get the refund is because of that sales tax refund. The problem with that is that if that's complete, if the retailer makes a sale and has its own wholly owned subsidiary bank, issue a credit card or fund it, then they're still saying the retailer should get that refund. But if for some reason that different community is now owned by the shareholder of Citibank, that now all of a sudden this becomes completed transactions. I mean, the retailer is doing the same thing it was doing before. So there's really no completed transaction document. It's just a phrase made up to try and explain a new way to prohibit assignments. But one thing I think that's very important to understand is when you go to the language of regulation talking about bad debt right, it doesn't refer to the retailer or the retailer got money from a lender or got money from a customer. What it says is in the case of taxpaying an account receivable that became a bad debt, it becomes a taxpayer. What it does is it looks at what did the purchaser pay. If the purchaser paid the whole purchase price, then that's what the State's tax ultimately is measuring. Now, it's defined in the retail circulation tax. The seller receives the money from the purchaser. And this reg specifically says if you've got an account receivable where you had taxes, that's a bad debt period. It doesn't matter whether the retailer self-advanced it or a third party financed it. So because the focus is on that, the whole completed transaction is constant. It doesn't really exist or wouldn't apply. A couple quick points I want to point out in my final remaining time. There's a lot of things in the Department's brief that I don't think are that relevant to the case, but just simply aren't in the record. And so it really should be more this way. The issue of whether the Department has allowed or not allowed certain types of refunds or has it ever allowed a refund in a certain type of situation is simply not in the record. The public policy argument is that the Citibank makes a lot of money, so if it's not given a refund, that's not in the record. Sure, I can tell you that the Citibank charges interest to its customers. I can tell you that they charge fees. Just like the retailer when they make financial sales, none of that stuff is in the record. And when we talk about cases and other jurisdictions, there's an ALR out there that tries to reconcile the cases. And I think it's like 40 or 50 pages long. I could add facts. I argue with some of those cases. I can tell you that some of those cases are not all bearable to taxpayers. There's many that the taxpayers want, I think 10 by my count. There's a lot of split decisions, but a lot of those cases are decided on, whether the statute allows a credit card to be refunded. A lot of the states send a lender to get it by assignment. There's a certain level of remedy that's available. You can count the address in four or five pockets. If you try to figure out which ones are most likely to go in, you can count the number of judges that went one way or another. I mean, it would take, you could spend hours explaining. It's different or not. The fact of the matter is we've got four judges, and four to seven of you have all thought that Illinois allows the assignment. Mr. Larson, does your argument that assignability is the presumption rather than the exception, would that even warrant the same decision in a case where a credit card company got the assignment in a case where a retailer took a bad check? Well, if the retailer took a bad check… Where there was no relationship really between the transaction and the credit card company and the retailer. I don't know why they'd want to do that and take that assignment, but I'm just, in the theoretical, I'm wondering if that would apply. Well, it practically probably wouldn't apply. You'd have to look at the facts. In order to… Any right that the retailer has, if that's refunded because of a bad check, and they didn't want to excuse themselves, they could have put a sign on it. And any company like Citibank, they assign it to, because Citibank, by the way, this business, it's in this case, it's not a credit card company. It's not in the record that the company that acquired it does have that. It's in this case. It's not in the record, but I don't think there's any relevance to that. But I think that the point here is to ask support for it. It stays for the record, if possible. Thank you. Thank you. Four or five points. One of the reasons why these debts are not assigned is because of the risk of mistake. In this case, Citibank tendered a refund application asking for 8% of the total back refunded to its bad debt. The department was confused by that because the Illinois sales tax is 6.5%. Because we knew that the sales tax was 6.5%, we knew the application was incorrect. And this is all part of the record. It's all part of the ALJ's discussion. But it makes the point that we don't have a relationship with credit card companies. And when they send us claims for refunds, we have really no way of checking. Now, in this case, the ALJ pointed this problem out. But we wouldn't have this information in a general case where we received just a claim saying, we are a credit card company, these are the retailers. Now, they say that you can audit us as you like. But my point is that this has really become far from a simple process to refund the Illinois retailers who we have a relationship with. That's one public policy reason not to allow this to expand beyond the retail context. By my count, there are 18 states that have rejected my opponent's argument. Alabama, Arizona, Arkansas, Connecticut, Florida. It goes on and on. You can go through my opening brief. Georgia, Tennessee. I quoted a case in my RFI brief which I thought said perfectly what I'm trying to argue. The majority of states that have addressed this issue, says the Arkansas Supreme Court, have strictly construed bad debt statutes to find that the plain meaning of the tax statute prevails over general assignment principles unless there is an express provision that permits an assignment and grants an assignee the benefits of the tax credit. And that's my argument as well. My opponent talks about a case called Noodle Mill, which I think is from the 1940s, early 1940s. That's the case where one merchant asked for a credit memorandum to be transferred. The Department denied it. The Court said, no, look, this is a transfer between one retailer and another. It should be allowed. The General Assembly then changed the statute. Section 6 was changed. And Section 6 now says that credit memoranda can be assigned from one merchant to another. So my argument is back again to the statutory text. The General Assembly is okay with assignments, one creditor, one retail merchant to another. The General Assembly didn't say that claims could be assigned. And again, I think that's an important distinction. It's actually not a windfall to the Department. It's actually a windfall to Citibank that they're arguing for because, as I say, if there's not a statutory hook for the Department to issue a credit or refund, there is no credit or refund due. So that's the windfall here. And that's the argument that we think the Court should reject, that the appellate court seems to get wrong, which is that someone who is not someone in a relationship with the Department should be able to get a tax refund for money it never tended. Lastly, my opponent talked about our Illinois Code of Civil Proceeds or Illinois, forgive me, Regulations 130.1960D and talks about the language of Subpart 3. It seems like it's written in the passive tense, so it sounds like someone who's experienced a bad debt claim should be able to apply to the Department, and it never says retailer. But if you were to look at the Regulations Part 3, together with Part 1 and Part 2, you see that what the Regulation is speaking to is retailers. Part 1 talks about retailers. Part 2 talks about retailers. Part 3 is written in the passive tense. But I would say that our Regulation does not, by its language, extend a credit or a refund to third parties. This section of the Regs should be read as the Department has always read it, which is that it's limited to retailers, consistent with the language of Section 6, consistent with the language of the recently adopted provisions of Section 6d. And so for that reason, unless there are questions, I'll ask the Court to reverse the lower courts and reinstate the Department's decision. Thank you. Thank you. Case Number 121634, City Bank v. Illinois Department of Revenue, will be taken under advisement as Agenda Number 13. Mr. Elitz and Mr. Larson, we thank you for your arguments today. You're excused with our thanks.